682 S.E.2d 8

**Eliza FRAZIER and Dorothy Anderson Brailford, Respondents,**

v.

**Simon SMALLSEED; George Holmes; Eve Green; Louisa Brown; Earnestine Smalls; Virginia Anderson; Frank Green and Luther A. Green, if living, and if deceased, their heirs at law, next of kin, distributees, devisees and any persons claiming under, by or through them, also, Jane A. Hannah and Donald Hannah; Colden R. Battey, and all other persons unknown claiming by, under or through them as heirs, distrib-**

utees, devisees, and any and all persons unknown having, or claiming to have, any right, title, estate, interest in or lien upon the real property described in the Amended Complaint, being designated collectively as John Doe, including all persons unknown, all minors, persons in the Armed Forces, persons non compos mentis, and any and all other persons under any disability who might have a claim to have any right, title, interest in or lien upon the real property described in the Amended Complaint, designated as Mary Roe, Defendants,

Of Whom Colden R. Battey is Respondent,

Jane A. Hannah and Donald G. Hannah are Appellants,

and

Matthew McAlheany, Intervenor, is Respondent.

No. 4558.

Court of Appeals of South Carolina.

Heard March 17, 2009.

Decided June 4, 2009.

58

Alysoun M. Eversole, of Beaufort and Stephen L. Brown, William L. Howard, and Russell G. Hines, all of Charleston, for Appellants.

Colden Battey and Louis O. Dore, both of Beaufort and Robert V. Mathison, of Hilton Head Island, for Respondents.

PER CURIAM.

In this civil case, we must determine whether the trial court erred in concluding Donald and Jane Hanna (collectively the Hannas) did not own certain property located in Beaufort County by adverse possession and whether Eliza Frazier and Dorothy Anderson Brailford have a right to an easement in certain property located in the same county. We affirm in part and reverse in part.

## FACTS

The case involves around a parcel of land located in Beaufort County on Corn Island.[1] Specifically, the property at issue lies within Section 29, Township One, Range One East. The individual lots within Section 29 are numbered sequentially. The numbering begins in the upper right corner as Lot 1 and continues, reading right to left until Lot 8 is reached in the upper left corner of the grid. The next row of lots is to the south starting with Lot 9 immediately below Lot 8 on the left side of the grid and continuing left to right until Lot 16 is reached on the right side of the grid immediately below Lot 1. The particular parcel of land in question in this case is Lot 9.

Eve Green, whose descendants are Frazier and Brailford, purchased eight acres of land on Corn Island from George Holmes in 1881. By 1889, Green had increased her holdings on Corn Island from eight acres to twenty-two acres. In 1954, Beaufort County began to keep tax records by district, map, and parcel numbers. In this same year, the property record card for Green's twenty-two acre parcel was designated as Parcel 1 on Map 12 in the name of "Heirs of Eve Green" (the Heirs). Parcel 1 on Map 12 included Lots 9, 23, 24, and 26 in Section 29. Lot 24 is directly below Lot 9, while Lot 23 abuts

---

1. Corn Island is also known as James Island.

Lot 24 on the east, and Lot 26 is immediately to the south of Lot 23. Green or her heirs paid taxes on the twenty-two-acres until 1997. In June 1997, the Heirs sold Lot 26 and a small portion of Lot 23 to Broadus Thompson and his wife, Patricia Thompson (collectively the Thompsons).

At trial, the Hannas argued they had been in open, notorious, hostile, continuous, and exclusive possession of Lot 9 for a period in excess of ten years and asked the trial court to award title to the property by reason of adverse possession under color of title. Frazier and Brailford argued they were entitled to an easement over Cassena Road and Cassena Island Drive, which had been constructed by the Hannas and crossed the Hannas' property. Matthew McAlhaney sought to intervene because he had a contract to purchase Lot 9, among other property, from Frazier and Brailford.

The trial court allowed McAlhaney to intervene. The trial court concluded the Hannas did not own Lot 9 by adverse possession. The trial court also found Frazier and Brailford were entitled to an easement by prescription over Cassena Road and Cassena Island Drive. The trial court also denied the Hannas' post-trial motions. This appeal followed.

## LAW/ANALYSIS

### I. Adverse Possession

Initially, the Hannas argue the trial court erred in holding they did not own Lot 9 by virtue of adverse possession under color of title. We disagree.

While an action to quiet title usually rests in equity, an action to determine title to real property is an action at law. *Eldridge v. City of Greenwood,* 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct.App.1998). Likewise, an adverse possession claim is an action at law. *Miller v. Leaird,* 307 S.C. 56, 61, 413 S.E.2d 841, 843 (1992). In an action at law tried by a judge without a jury, the appellate court will correct any error of law, but it must affirm the trial court's factual findings unless no evidence reasonably supports those findings. *Eldridge,* 331 S.C. at 416, 503 S.E.2d at 200; *see Knight v. Hilton,* 224 S.C. 452, 456, 79 S.E.2d 871, 873 (1954) (holding whether deceased spouse of claimant had held title to land

involved by adverse possession was a legal issue and conclusion of the trial court was binding upon an appellate court if any evidence reasonably tended to sustain it).

In order to acquire title by adverse possession, the claimant must show the possession to "be actual, open, notorious, hostile, continuous and exclusive for the whole statutory period. It may be stated as a general rule that claimant's possession must be such as to indicate his exclusive ownership of the property." *Gregg v. Moore*, 226 S.C. 366, 370, 85 S.E.2d 279, 281 (1954). Color of title, as employed in this case, is relevant to adverse possession in that color of title may be used to show possession of an entire tract of property even though the claimant adversely possesses only a small portion of the entire tract. *Johnson v. Pritchard*, 302 S.C. 437, 446, 395 S.E.2d 191, 196 (Ct.App.1990). The South Carolina Supreme Court has described color of title as follows:

> Color of title means any semblance of title by which the extent of a man's possession can be ascertained. It is anything which shows the extent of occupant's claim. The object of color of title is not to pass title. In that case it would be title, not color of title. The only office of color of title is to define the extent of the claim and to extend the possession beyond the actual occupancy to the whole property described in the paper. Hence, when one enters upon land, under color of title, his actual possession of a portion of the property will be constructively extended to the boundaries defined by his color of title.

*Mullis v. Winchester*, 237 S.C. 487, 492, 118 S.E.2d 61, 63 (1961) (internal quotations and citations omitted).

The Hannas pursued their claim of adverse possession under color of title. To support that theory, the Hannas argued that in 1951 a deed from Joseph Holmes to H.B. Attaway, Sr.,[2] J.M. Attaway, and H.B. Attaway conveyed forty-seven acres of property. According to the Hannas, this conveyance included a twenty-acre parcel that they believe contained Lot 9. A careful review of the record reveals the Hannas' belief the 1951 deed included Lot 9 is misplaced.

---

2. H.B. Attaway, Sr., is Jane Hanna's father.

The 1951 deed for the forty-seven acres consisted of twenty-seven acres from the estate of Caesar Holmes and twenty acres from the estate of Sam Holmes. These two parcels were in turn comprised of Lots 17, 18, 19, 20, and 32. Nowhere is Lot 9 included in the 1951 deed. There was no color of title conferring any ownership interest in Lot 9 to the Hannas. The Hannas' claim of occupying Lot 9 under color of title is without evidentiary support. As such, in order to prevail under a theory of adverse possession the Hannas must show their possession of Lot 9 to "be actual, open, notorious, hostile, continuous and exclusive for the whole statutory period." *See Gregg*, 226 S.C. at 370, 85 S.E.2d at 281.

■ If a claimant asserts title by adverse possession and his or her occupancy is not under color of title, the claimant must show either fencing or other improvements covering most of the subject land or some other continuous use and exercise of dominion. *King v. Hawkins*, 282 S.C. 508, 511, 319 S.E.2d 361, 362 (1984).

■ In the present case, the record reveals the Hannas never fenced the property, made improvements to it, or exercised dominion over it. Peter Brown, who stated he was intimately aware of the property on Corn Island, testified that Lot 9 had never been farmed or fenced. Louise Calvary, who testified she was an heir of Green, stated she came to Beaufort County to pay taxes on the property between 1996 and 2004. Calvary testified that during these visits she would inspect the property, and when asked whether it was fenced, she replied it was not. Additionally, Calvary testified that Don Hanna was timbering the property but when asked to stop, he complied. Although this testimony may seem self-serving, Jane Hanna's testimony confirmed Calvary's account.

Jane Hanna was asked, "The only purpose that you ever used Lot 9 was for recreational?" She replied, "Yes." Jane Hanna was also asked, "You have never fenced [Lot 9]?," to which she replied, "Never fenced it." Based on the foregoing, evidence reasonably supports the trial court's findings. *See Knight*, 224 S.C. at 456, 79 S.E.2d at 873 (holding whether deceased spouse of claimant held title to land involved by adverse possession was a legal issue and conclusion of trial court was binding upon an appellate court if any evidence reasonably tended to sustain it).

## II. Easement

The Hannas next argue the trial court improperly concluded Frazier and Brailford were entitled to an easement by prescription over Cassena Road and Cassena Island Drive. We agree.

■ "The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Tupper v. Dorchester County,* 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997). "However, the determination of the extent of a grant of an easement is an action in equity." *Id.* As such, this court may take its own view of the evidence on the latter issue. *Id.*

The only public road leading to Corn Island is Coosaw River Drive. Prior to 1994, the only means of accessing property on Corn Island from Coosaw River Drive was by a road (Old Road) that crossed the properties of the Hannas, Colden Battey,[3] and the Heirs. The Old Road ran along the southern boundary of the Hannas' and Battey's property and crossed onto the property of the Heirs. The location where the Old Road crossed the Heirs' property was sold to the Thompsons. Based on these facts, the trial court concluded the Heirs possessed a prescriptive easement over the Old Road.

In addition to finding this easement, the trial court relocated the easement to a new road constructed by the Hannas. In 1994, Don Hanna cleared a new road that crossed the Hannas' and Battey's property. This new road is called Cassena Road from the point it intersects the public road, Coosaw River Drive. Cassena Road splits at a point north of the boundary between the Hannas property and property owned by the Thompsons. The section of Cassena Road that goes north onto the Hannas property is called Cassena Island Drive, while the section that heads south onto the Thompsons property is called Cassena Road. After Cassena Road was built, the Old Road fell into disuse and became obstructed by debris and trash. As a result, the Thompsons, Battey, and the Hannas employed Cassena Road and Cassena Island Drive to access their property.

---

3. Battey owns property on Corn Island.

 To establish a private right of way by prescription, one must show "(1) the continued and uninterrupted use or enjoyment of the right for the full period of twenty years, (2) the identity of the thing enjoyed, and (3) the use or enjoyment was adverse or under claim of right." *Hartley v. John Wesley United Methodist Church of Johns Island,* 355 S.C. 145, 150, 584 S.E.2d 386, 388 (Ct.App.2003).

With respect to the first element, no evidence showed the Heirs used the Old Road for the required twenty years. Battey testified he did not specifically know if the Heirs had ever used the Old Road. Jane Hanna testified that she never saw the Heirs use the Old Road. Additionally, the trial court could not point to any specific occurrences in which the Heirs ever used the Old Road. The trial court's conclusion that the Heirs owned an easement by prescription over the Old Road was error because no evidence in the record showed the Heirs ever, much less for twenty years, employed the Old Road to access their property.

 The trial court also stated, "[T]he Hannahs [sic] are estopped to deny that the easement of Frazier and Brailford moved when Donald G. Hannah [sic] relocated the road. The 'old road' had been in place and had been used by all owners on Corn Island for a period sufficient to establish the easement by prescription, at the time Donald G. Hannah [sic] made his decision to move the road...." Even if we assume, without deciding, the trial court properly employed estoppel in this case, the necessary elements of estoppel are not met.

The essential elements of estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; [and] (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, the essential elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) prejudicial change in position.

*S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth.*, 311 S.C. 29, 33, 426 S.E.2d 748, 750 (1993) (internal citations omitted).

The first element requires the Hannas' conduct to amount to a false representation or concealment of material facts or at least, which is calculated to convey the impression the facts are otherwise than and inconsistent with those that the Hannas subsequently attempted to assert. This element was not met because the Hannas did not make any representations, nor did their conduct amount to a false representation or concealment of facts, with respect to the Heirs using the Old Road. Jane Hanna testified she never saw the Heirs use the Old Road. Additionally, the trial court could not point to any specific occurrences in which the Heirs had ever used the Old Road. As the Heirs presented no direct evidence they ever employed the Old Road, the Hannas could not have made any representations to the Heirs. As such, the trial court committed reversible error in concluding Frazier and Brailford were entitled to an easement by prescription over Cassena Road and Cassena Island Drive.

## CONCLUSION

Accordingly, the trial court's decision is
**AFFIRMED IN PART AND REVERSED IN PART.**

HUFF, WILLIAMS, and KONDUROS, JJ., concur.