2284

Francis W. DAVIS, Respondent v. Gene B. EPTING, Appellant.

(454 S.E (2d) 325)

Court of Appeals

*William Isaac Diggs,* of *McCutchen, Mumford & Diggs,* Myrtle Beach, *for appellant.*

*William A. Bryan,* of *Bryan & Haar,* Surfside Beach, *for respondent.*

Submitted Dec. 6, 1994

Decided Dec. 29, 1994; Reh. Den. Feb. 17, 1995.

HOWELL, Chief Judge:

Davis brought this action against his neighbor Epting seeking nullification of a quit claim deed, declaration of a permanent easement over a subdivision road, Virginia Lane, which dead-ends into a marsh, and an injunction prohibiting Epting from obstructing access over and across Virginia Lane. Epting counterclaimed alleging abuse of process. The trial court granted directed verdicts for Davis on all issues except the permanent injunction. The trial court later found that Davis had an easement by grant from the beginning of Virginia Lane to the marsh, and issued a permanent injunction requiring Epting to remove all obstructions from the right of way of Virginia Lane and refrain from further barricading efforts. Epting appeals. We affirm in part and reverse in part.

Epting and Davis each own two subdivision lots on Virginia Lane. Both parties have homes on their respective lots. The parties' lots are located on the south side of Virginia Lane, with Davis' lots located near the entrance, and Eptings's lots located near the end of Virginia lane and the marsh. Davis

rents part of his property to short-term tenants who also use Virginia Lane.

The parties purchase their lots in the 1960s from a common grantor, J.J. Nettles, the developer of the subdivision. The lots were conveyed by reference to a recorded plat which showed Virginia Lane as a fifteen-foot-wide alleyway extending from Waccamaw Drive on the east to the marsh on the west. Virginia Lane was unpaved until 1984 when the parties and a third neighbor shared the cost of paving the road.

In 1990, Epting began to experience problems with vandalism.[1] Epting obtained a quit claims deed from Nettles' heirs which purported to convey the portion of Virginia Lane adjacent to Epting's property. In an attempt to stop the recurring vandalism, Epting barricaded the portion of Virginia Lane he obtained by laying wooden planks, similar to railroad ties, across the width of Virginia Lane on the eastern border of his property. Epting also rebuilt his new home closer to the road after it was damaged by Hurricane Hugo. In so doing, however, Epting built his staircase with a one-foot overhang onto Virginia Lane which extends the full length of the staircase. Finally, Epting began construction of a chain link fence across Virginia Lane.

## I. *QUIT CLAIM DEED*

Epting contends that the quit claim deed is valid on its face and because Davis did not contest its regularity at trial, the trial judge erred in declaring the deed a nullity. We agree. A deed which is valid and regular on its face is clothed in a presumption of validity. *Davis v. Monteith*, 289, S.C. 176, 345 S.E. (2d) 724 (1986). There was no evidence presented at trial to rebut the presumption of validity.[2] Thus, we reverse the trial judge's order invalidating the deed.

---

[1] The vandalism consisted of minor problems such as litter, signs knocked over, and golf cart tracks across the lawn.

[2] Davis argues that the deed is invalid because Virginia Lane has been dedicated to the subdivision owners, and thus Nettles' heirs did not own the property at the time of the conveyance to Epting. However, the cases cited by Davis do not apply to these facts because they involve public roads, which are proved dedicated by showing dedication and public acceptance. *See Timberlake Plantation Co. v. County of Lexington*, ___ S.C. ___, 431 S.E. (2d) 573 (1993); *Anderson v. Town of Hemingway*, 269 S.C. 351, 237 S.E. (2d) 489 (1977). The parties agree that Virginia Lane is a private road.

The quit claim deed transferred only such interests to Epting as Nettles' heirs held in the property. Nettles' heirs held the interest that Nettles held: fee simple subject to the easements of the lot owners in the subdivision. Where land is subdivided, platted into lots, and sold by reference to the plats, the buyers acquire a special property right in the roads shown on the plat. *Blue Ridge Realty Co. v. Williamson*, 247 S.C. 112, 145 S.E. (2d) 922 (1965). If the deed references the plat, the grantee acquires a private easement for the use of all streets on the map. *Carolina Land Co. v. Bland*, 265 S.C. 98, 217 S.E. (2d) 16 (1975). The deeds conveying the property to Davis and Epting reference the plat that shows Virginia Lane as the access road. Thus, both Davis and Epting received easements over Virginia Lane at the time of their purchases from Nettles. Epting's subsequent purchase of a portion of Virginia Lane resulted in fee simple ownership, but he holds the property as a servient estate, subject to Davis' easement, and the easements of all the other owners in the subdivision, as did his grantors.

## II. *PERMANENT INJUNCTION*

Epting further argues that the trial judge erred in permanently enjoining him from obstructing Virginia Lane. We disagree. A servient estate may limit access across an easement if the limitation: 1) does not unreasonably interfere with the right of passage of the dominant estate; 2) is necessary for the preservation of the servient estate; and 3) is necessary for the use of the servient estate. *Brown v. Gaskins*, 284 S.C. 30, 324 S.E. (2d) 639 (Ct. App. 1984). Thus, *Brown* allows the owner of a servient estate to reasonably limit access over an easement. *Id.* However, the rights of ingress and egress conferred by the easement in this case were granted by specific reference to the right of way on the subdivision plat. Those rights were not only conferred upon Davis, but upon every other owner and prospective owner in the subdivision. While Davis abandoned his contention that this was a public easement, and there is no contention that it was ever accepted by a public body on behalf of the public, it cannot be denied that the rights of use by others are extensive, approaching the level of use of a public easement. Therefore, given the extensive use of Virginia Lane, it is difficult to

conceive of a method of limiting access that would be reasonable.

Epting argues that requiring Davis to negotiate the barricade in order to gain access to the marsh is not unreasonable. Epting further argues that his proposed fence would not unreasonably interfere with Davis' easement because Epting would provide Davis and his tenants with keys to the fence. We disagree. Davis has the right to use Virginia Lane for any purposes consistent with the easement. These obstructions eliminate Davis' right to vehicular access, and impede the right to access on foot. This is unreasonable given the nature of Virginia Lane. Furthermore, any obstruction by Epting obstructs Davis' right to use Virginia Lane beyond the point where Epting owns the fee simple. Thus, Epting would be interfering with portions of Virginia Lane (the road beyond Epting's property leading into the marsh) that he does not own. *See Carolina Land Co., supra,* (a grantee acquiring an easement by grant acquires a right of way to the full extent of the easement, not merely in front of his property). Finally, Epting's staircase impedes Davis' full use of the easement and is unreasonable given the use of Virginia Lane as a road.

Even if Epting's barricade and fence did not unreasonably interfere with Davis' right of passage, they are not necessary for either the preservation or use of Epting's property. The trial judge found that Epting could, in the interest of preserving his property, erect a barrier around his lot. We agree. By erecting a fence around his lot, Epting could prevent most of the vandalism. Moreover, the placement of Epting's staircase was discretionary, and not necessary for the preservation or use of his property. Epting should be required to remove the steps from the paved portion of Virginia Lane.[3] Thus, the trial judge's order issuing an injunction is affirmed.

### III. *ABUSE OF PROCESS*

Epting's final argument is that Davis brought this action to dissuade Epting from developing his property and thus, the trial judge erred in directing a verdict in

[3] Davis asserts that Epting has failed to properly appeal from the specific findings of fact in regard to the trial judge's analysis of the elements set forth in *Brown.* We agree with Epting that Davis' argument is without merit because all relevant questions fall fairly within Epting's argument of the applicability of *Brown.*

Davis' favor with respect to Epting's abuse of process claim. We disagree. The elements of an abuse of process claim are (1) an ulterior purpose; and (2) a willful act in the use of process not proper in the regular conduct of the proceedings. *Broadmoor Apartments v. Horwitz*, 306 S.C. 482, 413 S.E. (2d) 9 (1991). An ulterior purpose exists if the process is used to gain an objective not legitimate in the use of the process. *See Rycroft v. Gaddy*, 281 S.C. 119, 314 S.E. (2d) 39 (Ct. App. 1984). Although there is evidence that Davis knew of Epting's plans to develop his property, having reviewed the record, we find no evidence that Davis used the process to gain anything other than his right to access Virginia Lane. This does not constitute an ulterior purpose. Nor do we find evidence of an improper act in the use of process. Thus, we affirm the directed verdict on the abuse of process claim.

For the foregoing reasons, the trial court's decision is

Affirmed in part, reversed in part.

CONNOR, J., and HOWARD, Acting Judge, concur.